ALBERT SARRAZIN AND ELAINE SARRAZIN, Appellants, *v.* FIRST NATIONAL BANK OF NEVADA, RENO, NEVADA, A Corporation, as Executor and as Trustee of the Estate of Emilie Sarrazin, Et Al., Respondents.

No. 3308

March 10, 1941.                          111 P.(2d) 49.

*J. M. Frame* and *Harry G. Pray,* for Appellants.

*Nash P. Morgan,* for Respondent.

## OPINION

By the Court, TABER, J.:

On October 29, 1935, Emilie Sarrazin executed her last will, which contains the following provisions:

"Second: I hereby give, devise and bequeath unto my Trustee, hereinafter named, all of my estate, real, personal and mixed, of every nature, kind and description, wherever situate and however held, which is or may be subject to my testamentary disposition at the time of my death, to have and hold the same, in trust nevertheless, for the uses and purposes, with the powers and in the manner hereinafter mentioned, namely, to wit:

"(a) To pay over to my daughter, Elaine Sarrazin, now a resident of Reno, Nevada, and who is thirty-seven years of age, the sum of $35 a month until my said daughter shall reach the age of forty-five years, and thereafter to pay her the sum of $45 a month during the remainder of her life time,

"(b) To pay over to my son, Albert Sarrazin, who is now a resident of Reno, Nevada, and who is thirty-eight years of age, the sum of $25 a month during his life time,

"(c) In the event of the death of my said daughter before the death of my said son, the payments herein authorized to be made to my said daughter will be paid to her children, if she leaves any, and if not, shall be paid to my son,

"(d) In the event of the death of my said son before the death of my said daughter, the payments herein authorized to be made to my said son will be paid to his

children, if he leaves any, and if not, shall be paid to my said daughter.

"(e) Upon the death of both of my son and daughter, without children of either living, I direct that my Executor and Trustee, hereinafter named, shall convey all of my estate, real, personal and mixed, if any then remains in its possession, to my niece, Honorine Gauthier, who resides at Connune, Saint Euzebe, Canton, Saint Bonnet, Hauter Alpes, France, or in case of her death to her children then living,

"Third: I hereby authorize and empower my Trustee, hereinafter named, to invest and reinvest the trust funds hereinbefore provided for in any securities which said Trustee deems best, whether the same are or are not investments to which Executors and Trustees are by law limited in making investments, and to change or vary investments from time to time as it deems best,

"Fourth: I authorize and empower my said Trustee, hereinafter named, to hold and continue in its discretion, any securities in which any of my property may be found invested at the time of my death, my intent being that my said Executor and Trustee shall be absolved and discharged from the absolute legal duty of converting my estate into money, and that it shall not be responsible for any shrinkage in value by reason of the exercise of the discretion hereby reposed in it.

"Fifth: I authorize and empower my Executor and Trustee, hereinafter named, in its discretion, to sell and dispose of any and all of my property, real or personal, wherever situate and however held, either at public or private sale, and at such time or times and upon such terms as may seem to it proper and advisable and to give to the purchaser or purchasers of my said property all deeds, bills of sale, and other evidences of title which may be expedient or necessary.

"Sixth: I nominate, constitute and appoint the First National Bank of Reno, Nevada, as my Executor of this, my last Will and Testament, and as Trustee of any and all trusts herein created  *  *  *."

When testatrix died, neither Albert nor Elaine had any children, but a child was born to Albert on October 16, 1937. The will was admitted to probate in the Second judicial district court, Washoe County, November 25, 1935, and respondent bank appointed executor and trustee. The estate, consisting of real estate, promissory notes and other indebtedness to deceased, cash, and household furniture and effects, was appraised at $42,-214.77. Most of the promissory notes were secured by mortgage or trust deed.

In January 1940 appellants, as plaintiffs, commenced an action in said district court against respondents, as defendants, praying that the purported will be held void, and the probate proceedings theretofore had thereunder set aside; that all the property of the estate be awarded to plaintiffs with the right of administration thereon; that the trustee be required to make a full accounting; that the trust be terminated, and said trustee and executor discharged; that the court construe said purported will, and if it be held void, then to distribute the estate to plaintiffs in the proportions they would receive under the law of descent and distribution, subject to such further administration as may be necessary. Said relief was asked upon the grounds and for the reasons following: (a) That said purported will violates the rule against perpetuities, for the reason that it may not and will not necessarily vest said estate within a life or lives in being and twenty-one years thereafter from the death of the said Emilie Sarrazin, deceased, or at all; (b) that the vesting of said estate under said purported will is remote for the same reason that it violates the rule against perpetuities and is therefore contrary to public policy; (c) that the vesting of said estate, under said purported will, is uncertain and indefinite as to which person, or persons, or class of persons, if any, in which it may ultimately vest, if it vests at all, and the determination thereof, if the same can be determined, may have to await a period of time greater than a life or lives in being and twenty-one years thereafter from the death

of the said Emilie Sarrazin, deceased, and there were no persons, person, or class of persons in being at the death of said testatrix in which said estate must necessarily vest within the said rule against perpetuities, or at all; (d) that the vesting of the same is contingent upon uncertain events, and the person, persons, or class of persons who may ultimately take said estate is dependent upon possibilities based upon possibilities and not upon any event or events certain to happen; (e) that said purported will unduly restrains the alienation of said estate, and creates an absolute, indestructible trust therein which may last longer than a life or lives in being and twenty-one years thereafter from the death of the said testatrix."

Section 4 of article XV of the constitution of Nevada reads: "No perpetuities shall be allowed except for eleemosynary purposes." There is no Nevada statute defining the rule against perpetuities. The common-law rule is usually stated thus: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Gray, The Rule against Perpetuities, 3d Ed., p. 174, sec. 201. And see 48 C. J. 937, sec. 4; 21 R. C. L. 282, sec. 2. Other than the constitutional provision above quoted, there have not been called to our attention any other provisions, either constitutional or statutory, invalidating interests which vest too remotely, or forbidding restraints on alienation.

Appellants contend that subdivisions (c) and (d) of the second clause of the will contemplate continuance of the monthly payments not only while testatrix' children, or either of them, lives, but beyond that and until the death of her last surviving grandchild, should such grandchild survive Albert and Elaine. According to the construction put upon these subdivisions by respondents, the monthly payments are to cease upon the death of whichever of testatrix' two children survives the other. It will be noted that the monthly payments provided for in subdivision (c) are to be made in the event of the

death of testatrix' daughter "before the death of my said son," and those provided for in subdivision (d) are to be made in the event of the death of testatrix' son "before the death of my said daughter." In view of the quoted phrases, it will be seen that if Elaine should die before Albert, the monthly payments provided in subdivision (c) would begin upon her death; but no monthly payments could in that event be made under subdivision (d) upon the death of Albert, because he would not have died "before the death of my said daughter." So, if Albert should die before Elaine, no monthly payments under subdivision (c) could be made upon the death of Elaine, because she would not have died "before the death of my said son." We can perceive no basis for attributing to testatrix an intention that, should any of her grandchildren survive both Albert and Elaine, payments should continue under one of said subdivisions, but not under the other. There is nothing in the will to indicate an intention on the part of testatrix to prefer one grandchild or group of gradchildren to another. Testatrix could not know which of her children would predecease the other, and if she had intended to discriminate, appropriate language would naturally have been employed showing what person or group was to be preferred. We therefore hold that under the provisions of the will the monthly payments are to continue as long as Albert and Elaine, or either of them, lives, but no longer.

Respondents take the position that said construction of subdivisions (c) and (d) is decisive of this case, because under such construction it is apparent, they say, that the will violates neither the rule against perpetuities nor any other rule of law. But appellants contend that, whatever construction may be put on said subdivisions, it does not affect the question of perpetuities or the vesting of the estate that would pass by the will; in other words it does not, they argue, materially affect the time that the estate, or any portion of it, might vest under the will.

It is undisputed that the will does not, at least expressly, dispose of the residue of the estate, if any, in the event that any grandchild or grandchildren of testatrix should survive both of her children; nor does it provide what is to become of the residue of the estate, if any, in the event that no grandchildren of testatrix, nor her niece, nor any of the latter's children, shall survive both Albert and Elaine. In either event, say respondents, it would become necessary to institute a probate proceeding to determine what disposition to make of the corpus of the estate and to determine who, at that time, would be entitled to take as heirs of the testatrix.

2. Appellants contend that this invalidates the will, as the vesting of an estate which depends upon the time that a will is probated is violative of the rule against perpetuities, because there is a possibility that the will might not be probated for more than twenty-one years after the death of the testatrix. On this point they cite the following cases: In re Campbell's Estate, 28 Cal. App. (2d) 102, 82 P. (2d) 22; Johnson v. Preston, 226 Ill. 447, 80 N. E. 1001, 10 L. R. A. (N.S.) 564; Husband v. Epling, 81 Ill. 172, 25 Am. Rep. 273; Miller v. Weston, 67 Colo. 534, 189 P. 610. None of these cases is applicable here, because in them the wills or other instruments provide, respectively, for the vesting of the interest or estate "when the estate of the said Thomas Mason is settled up," "twenty-five (25) years from and after the date of the probate of this will," [226 Ill. 447, 80 N. E. 1003, 10 L. R. A. (N. S.) 564], "on the admission of this will to probate," [67 Colo. 534, 189 P. 611], and "at the time of distribution of my estate." In the case at bar, title in the trustee is made to vest upon the death of testatrix. The distinction is pointed out in Miller v. Weston, supra, one of the cases relied on by appellants.

Appellants, however, make the further contention that while the will in this case does not specially provide that the vesting depends upon a time when a probate

proceeding will take place, still by its terms it is possible for circumstances to occur which will create the necessity for a probate proceeding at some remote date to determine in whom the corpus of the estate will ultimately vest; this they maintain, violates the rule against perpetuities, and invalidates the will and the trust it attempts to create. The court cannot agree with this position, for the reason that upon the death of whichever of testatrix' two children survives the other, the residue of the estate, if any, will immediately vest as intestate property in testatrix' heirs, or, if there be no heirs, then in the State by escheat. Thus the vesting of any residue will be well within the period of perpetuities.

It may be observed here that testatrix herself does not appear to have contemplated that there should necessarily be a specific corpus to be maintained intact during the lives of her two children. The will does not so provide, and in subdivision (e) of the second clause she directs her executor and trustee, upon the death of both her son and daughter without children of either living, to convey all of her estate, if any then remains in its possession, to her niece or, if the latter be then dead, to her children.

Whether the provisions made for Albert and Elaine are wise, fair, or just, is not for the court to say; they are valid, and clearly show the intention of testatrix that neither of her two children is ever to take anything under the will except the monthly payments therein provided.

The court being of opinion that neither the will nor the trust nor any provision of either is invalid, the judgment appealed from must be, and is hereby, affirmed.

### ON PETITION FOR REHEARING

May 26, 1941.

*Per Curiam:*

Rehearing denied.