CONTRAIL LEASING PARTNERS, Ltd. dba CONTRAIL AIRLINES; WILLIAM G. BALL, DAVID H. JAMES, RUSSEL R. CAPRIO, and CHARLES J. MITCHELL, Appellants, *v.* EXECUTIVE SERVICE CORPORATION; EXECUTIVE PRODUCTIONS, Inc.; LLOYD EDGER PERCELL; ROARING FORK STEAMSHIP, NAVIGATION AND AEROPLANE Co., Inc.; JAMES PERRY; W. B. McCARTER, Jr., and BONANZA AIRLINES, Inc., Respondents.

No. 14678

October 4, 1984 688 P.2d 765

*John P. Foley,* Las Vegas, for Appellants.

*Eric Zubel,* Las Vegas; *Wright, Shinehouse & Stewart,* Las Vegas; *Gentile & Massi,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

This appeal is divisible into two parts. The first part relates to apppellant Contrail's contention that the trial court erred in dismissing its cross-claim and counter-claim pursuant to NRCP 41(b). The second part relates to the refusal of the trial court to enter a default judgment in favor of Contrail against cross-defendant Bonanza Airlines.

1. In the litigation below Contrail asserted cross-claims against cross-defendants Perry and McCarter on theories of corporate *alter ego,* third party beneficiary, promissory estoppel, agency, conspiracy, and conversion. Contrail also counter-claimed against plaintiffs Executive Service Corporation, Executive Productions, and Percell claiming fraudulent misrepresentation on the part of Percell. The trial court concluded that Contrail had failed to present a *prima facie* case on either its cross-claims or counter-claims and accordingly granted motions for dismissals under NRCP 41(b).

At the close of a cross-claimant's case, a trial court may dismiss an action "on the ground that upon the facts and the law the [cross-claimant] has failed to prove a sufficient case for the court or jury." NRCP 41(b). In evaluating an appeal from an involuntary dismissal of an action at the close of the cross-claimant's case, "[cross-claimant's] evidence and all inferences that reasonably can be drawn from it must be deemed admitted and the evidence must be interpreted in the light most favorable to plaintiff." Hernandez v. City of Reno, 97 Nev. 429, 433, 634 P.2d 668 (1981); Bates v. Cottonwood Cove Corp., 84 Nev. 388, 391, 441 P.2d 622 (1968); Gordon v. Cal-Neva Lodge, Inc., 71 Nev. 336, 291 P.2d 1054 (1955).

After examining the record we must agree with the trial court's ruling, and, without delving into specifics of proof offered by Contrail in support of its claims, uphold the trial court and affirm its NRCP 41(b) rulings.

2. The second part of the appeal involves the refusal of the trial court to grant judgment in favor of Contrail on its cross-claim against Bonanza Airlines, notwithstanding Bonanza's default in defending against the cross-claim.

Contrail's cross-claim against Bonanza arises out of the following facts. Contrail leased an airplane called "Foxtrot" to Bonanza Airlines, Inc. Bonanza took possession of Foxtrot and used it in its passenger-carrying charter service. Pursuant to the lease, on February 24, 1978, Contrail made and delivered what was denominated as a promissory note to Bonanza, payable in the indeterminate amount of "$40,000 or so much thereof as may be advanced" by Bonanza. Bonanza was to "loan to Contrails the sum of $10,000 per month up to a maximum of $40,000," to be paid directly to the secured creditor of Foxtrot and applied to the account of Contrail on its obligation under a purchase agreement.

The time of payment of whatever principal and interest might be due was based on the occurrence of one of five contingencies. The parties conceded that four of these contingencies did not take place, and the note became due, if at all, on the "date which is six months after termination" of the lease.[1]

Bonanza defaulted on the lease. As a result, Contrail was unable to make payments on the purchase agreement of Foxtrot, and the airplane was repossessed. Contrail sought in its cross-claim against Bonanza to recover damages for Bonanza's breach of the lease and to cancel the note between Bonanza and Contrail. Default on the cross-claim was entered by the clerk of the district court on August 11, 1981.

For reasons unexplained by any party to this litigation, the district court refused to carry the judicial process to its conclusion and denied Contrail's request to enter a default judgment against Bonanza for damages arising out of the breach of the lease agreement and for cancellation of the described note. This refusal resulted in a judgment's being entered against Contrail and in favor of Executive Services, which had purchased the note at an execution sale in which Bonanza was the judgment debtor. Executive then brought suit againt Contrail for the amount due on the note. Judgment was entered against Contrail in the sum of $30,000 plus interest, $30,000 being the amount advanced by Bonanza under the note.

[1]The district court found that the lease "was terminated by the parties on July 17, 1978 upon the retaking of the aircraft by the secured party." There is some question as to whether a default and subsequent repossession necessarily constitute the termination of a lease. Since the issue was neither raised nor argued by the parties, however, it need not be considered.

In order to sustain Executive's judgment against Contrail on the mentioned Contrail-to-Bonanza note it is necessary to find that Contrail gained ownership of the note free from the defenses Contrail asserts against Bonanza. Executive obtained, in this litigation, a default judgment against Bonanza in the sum of $50,806.45. Executive, claiming that the note from Contrail to Bonanza was a liquidated and indefensible asset of Bonanza's estate, purchased the note as an asset of its judgment debtor's estate, thereby transferring entitlement to the note from Bonanza to Executive.[2] Executive did not, however, take ownership or other entitlement to the note free of Contrail's defenses against Bonanza.

In order to take an instrument free from all claims and defenses of any party to the instrument, the holder must be a "holder in due course." NRS 104.3305. A holder in due course is a "holder who takes the instrument: (a) For value; and (b) In good faith; and (c) Without notice . . . of any defense against or claim to it on the part of any person." NRS 104.3302.

The parties agree that Executive is not a holder in due course of the note because Executive had notice of Contrail's cross-claim against Bonanza for damages under the lease agreement and for cancellation of the note. One who is not a holder in due course "takes the instrument subject to: 1. All valid claims to it on the part of any person; and 2. All defenses of any party which would be available in an action on simple contract. . . ." NRS 104.3306.[3] Therefore, when Executive purchased the note at the execution sale, it took the note subject to Contrail's cross-claim defenses against the obligor.

Executive contends that the term "defenses" as used in the code was not intended to cover setoffs.[4] Specifically, Executive

---

[2]Contrail asserts that Executive failed to comply with the procedural requirements of an execution sale and thus lacks standing and capacity to sue on the note. NRCP 8(c) and NRCP 9(a) require this allegation to be plead affirmatively and with particularity. Contrail failed to plead any such affirmative defense in its answer to Executive's cross-claim and failure to so plead constitutes waiver. *See* Tobler & Oliver Construction v. Nevada State Bank, 89 Nev. 269, 510 P.2d 1364 (1973).

[3]At oral argument and in the trial below, Executive conceded that it took the note subject to whatever defenses Contrail had on the obligation to Bonanza.

[4]Executive cites United Overseas Bank v. Veneers, Inc., 375 F.Supp. 596 (1974), in support of this argument. In that case, however, the court

alleges that Contrail's cross-claim against Bonanza arises out of a transaction separate and distinct from the promissory note and cannot be used as a setoff against monies owing on the note. We disagree.

> Setoff is usually allowed where, through a course of separate transactions, two parties become indebted to each other. If one of the parties becomes insolvent, the other, instead of paying his debt in full and receiving a dividend on what is owed him, is held only for the difference, if any, between his debt and the insolvent's. The reason for such a rule is said to lie in the injustice of a contrary rule. Carr v. Hamilton, 129 U.S. 252, 255, 9 S.Ct. 295, 32 L.Ed. 669 (1889).

Korlann v. E-Z Pay Plan, Inc., 428 P.2d 172 (Or. 1967) (en banc).

If Bonanza Airlines had brought suit against Contrail for the amount due on the note, Contrail would be allowed to offset that amount owed by Bonanza on the lease. Contrail is likewise allowed to assert the setoff against Executive, who purchased the note with full knowledge of the setoff claim by Contrail. *See* Wear v. Farmers and Merchant's Bank, 605 P.2d 27, *reh'g granted,* 606 P.2d 1278 (Alaska 1980).

In an affidavit filed in open court, Contrail set forth the amount of money allegedly owed by Bonanza.[5] The district court made no finding with regard to this offer of proof, and from a review of the record it appears to be supported by the evidence. Instead, the court inexplicably refused to enter a default judgment in favor of Contrail. If Contrail can substantiate its claim for damages against Bonanza, the default judgment should be entered. Any damages attributable to Bonanza's default in lease payments are then subject to setoff from the amount due under the promissory note. This setoff is available against Executive, which, by its own admission, is not a holder in due course of the note.

---

was faced with a negotiable instrument. Because the note in this case is not a "sum certain," it is not negotiable, and the principles of *United Overseas* would not apply. Additionally, in Community Bank v. Ell, 564 P.2d 685, *reh'g denied,* 566 P.2d 903 (Or. 1977), the Supreme Court of Oregon held that a setoff *may* be asserted in an action by the transferee of a negotiable instrument, *unless the transferee is a holder in due course.*

[5] Contrail contends that $45,000 was owed by Bonanza under the lease agreement alone.

3. Respondents' requests for attorney's fees, pursuant to NRAP 38, lack relevant authority and need not be considered. Plankinton v. Nye County, 95 Nev. 12, 588 P.2d 1025 (1979); Woods v. State, 94 Nev. 435, 581 P.2d 444 (1978). Moreover, we find the contentions without merit.

We can find no reason or justification for the trial court's refusal to grant money judgment in favor of Contrail. This was error, and the matter is therefore remanded for entry of judgment if properly substantiated by Contrail.

Accordingly, judgment in favor of Executive and against Contrail is reversed and the case is remanded.